Decided 31 July, 1906.
**KANE v. LITTLEFIELD.**
86 Pac. 544.

WATERS—MINING DEBRIS—DAM AS NUISANCE—INJUNCTION:

1. Where a dam erected by a lower riparian proprietor backs water and mining debris onto the ground of an upper proprietor, who possesses the superior right to the use of the water, and prevents the debris discharged into the stream by the upper proprietor from being carried away, thereby interfering with the operation of the mine, the upper proprietor is entitled to have the maintenance of the dam enjoined as a private nuisance.

COSTS AND DISBURSEMENTS IN EQUITY—APPEAL.

2. Under the discretion confided to the court by Section 566, B. & C. Comp., the costs and disbursements of the trial court may be assessed against one party and the expenses of the appeal against the other party.

From Baker: SAMUEL WHITE, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Bridget Kane against David Littlefield and Fred Cole to enjoin interference with dams built across a non-navigable stream to divert water for irrigation. The complaint alleges that plaintiff is the owner of 160 acres of arid land in Baker County, particularly describing the premises, through which Blue Canyon Creek flows; that she built two dams in that stream, and by means of ditches diverted water therefrom which has been used for 10 years in irrigating crops grown on her land; that April 10, 1904, the defendants unlawfully destroyed these dams thereby preventing the water from flowing in the ditches to her premises, to her irreparable injury, and threaten to remove any dams that she may place in the creek, which menace they will execute unless restrained.

The answer denies the material allegations of the complaint and avers, in effect, that since 1864, the defendants and their predecessors in interest have been the owners and in the possession of 90 acres of patented placer mining ground joining plaintiff's land, and also of 60 acres of similar unpatented land adjacent to their mines, the working of which requires the use of a great quantity of water to extract the valuable ore which the premises contain; that in the year stated, the defendants' grantors and predecessors in interest appropriated all the water of the creek mentioned, and of its tributaries, which quantity they have ever since continuously used for mining purposes, and that such privilege is prior in time and superior in right to plaintiff's claim thereto; that the defendants' grantors constructed a tailrace from a point above such mines through the premises now owned by plaintiff to Powder River, which conduit has for more than 30 years been uninterruptedly used, except as hereinafter stated, for dumping tailings therein, to be conducted across her land, whereby a perpetual right has been

secured to continue to place debris in such race; that the plaintiff and her agents, within the last two years, have without right, built dams in such race, thereby obstructing the flow of water therein, and causing the debris to back upon defendants' mining ground to their irreparable injury, and that, in consequence of such unlawful acts, they were compelled to remove the dams, so that the tailings from their mines might be carried off, which abatement constitutes the injury of which the plaintiff complains. The reply having denied the allegations of new matter in the answer, the cause was tried, resulting in a decree as prayed for in the complaint, and the defendants appeal.                                              MODIFIED.

For appellants there was a brief over the name of *Olmstead & Strayer,* with an oral argument by *Mr. Martin Luther Olmstead.*

For respondent there was a brief and an oral argument by *Mr. John Langdon Rand.*

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony shows that Blue Canyon Creek enters plaintiff's land near the northwest corner, flows southeasterly and empties into Powder River. About 1880 the Marysville Mining Co., being the owner of certain placer mining ground situated on the creek above and joining the premises now owned by plaintiff, straightened and deepened the channel of that stream from its mouth to a point above such mines. This water course was improved, so as to drain the mining ground to the bed rock, and also to carry off the tailings produced by hydraulic mining. The channel was, in some places, dug 25 feet deep, while in other parts of the conduit a flume was constructed so as to give to the water flowing in the race sufficient velocity to take away the debris placed therein. The enterprise not proving profitable the patented mining ground and the water right appurtenant thereto were sold by the company making the improvement and such property has by mesne conveyances, as we understand, become vested in the defendants who are in possession of other unpatented mining claims situated on the creek above the mining ground for which they have a legal title.

In consequence of the failure to find gold in paying quantities in Blue Canyon, the flume has been allowed to decay and the race to fill with tailings, though some placer mines have been constantly operated on the creek by using the water thereof, the debris being carried down that stream. In the early spring, when the snow is melting in the mountains, Blue Canyon Creek and its tributaries afford about 2,500 inches of water, miners' measurement, and the current is so swift that most of the tailings deposited in the stream are carried into Powder River. In the later summer, however, the water generally ceases to flow in the creek and does not again become copious until the rainy season sets in.

The plaintiff's predecessor in interest used water to raise crops on the land now owned by her and she, in 1896, caused a dam to be built in the creek, 16 rods below the line where it enters her premises, and also constructed another dam 100 rods below the first, and by means of ditches diverted water which she used in irrigating crops, raising hay on about 100 acres of her land. The defendants having given notice to her of their intention to abate what they considered to be a private nuisance, removed her dams April 10, 1904. At that time they were mining on the side of a hill a mile and a quarter above the western border of her land. The place where they were then working is elevated about 100 feet above the top of her upper dam, so that it was impossible, with such obstruction to the flow of the water, to injure in any manner the operation of their mines at that place, and no immediate necessity existed for the removal of the dams. C. M. Foster, a mining engineer, as plaintiff's witness, testified that the grade of the creek from the western boundary of her land to the top of her upper dam is six feet, but that it would be impossible for the defendants to work their patented ground next to her premises, except by opening a race to carry off the tailings, and that if such dam were maintained, it would back the slums and debris on their land along the creek the distance of a quarter of a mile. The reconstruction of the lower dam, however, would not affect the defendants' mining ground in any manner, for the tailings

would be carried over the dam before the back water reached the defendants' premises. This witness says that the flume has been abandoned a great many years, but the right to the race has never been relinquished, and that every person mining on Blue Canyon Creek has used it to carry off tailings, though it has been filling therewith, and never cleared out to the bottom. Foster further testified that there had never been any mining done just above plaintiff's premises because at that place it was found that the ground did not contain sufficient gold to permit it to be worked profitably. O. N. Haskill, as defendants' witness, testified that the restoration of plaintiff's dams would prevent the defendants from mining their low ground for a mile immediately above her premises. The testimony of this witness is corroborated by that of Adam Christy. We think the testimony of Foster, who is an expert engineer, is entitled to greater credence, and conclude that the upper dam will not back the water farther than he states.

1. In *Turner* v. *Locy,* 37 Or. 158 (61 Pac. 342), it was held that a dam across a nonnavigable stream, whereby debris from the mine of an upper proprietor was arrested, does not constitute a private nuisance, authorizing an abatement thereof, unless the dam backs the water upon his premises, causing such an injury as to enable him to maintain an action for the damages sustained. The converse of this rule must necessarily be true, by the application of which it follows that when the dam of a lower riparian proprietor backs the water and debris upon the mining ground of an upper proprietor, who possesses the superior right to the use of the water, preventing him from operating his mines, equity will intervene to protect the interests of the latter. In the case at bar it is possible that the defendants' mining ground joining the plaintiff's premises contains such a small quantity of gold as to render the extraction thereof by hydraulic machinery unprofitable. A court of equity is not the guardian of competent persons, who must be permitted to manage their own affairs in any manner that best suits their judgment, so long as they do not interfere with the rights of others. It is true that the defendants and other miners

on Blue Canyon Creek placed the tailings from their mines in that stream, which causes such debris to be backed upon the defendants' mining ground by plaintiff's upper dam, but the weight of the testimony convinces us that her grantor entered into a contract with the Marysville Mining Co., the defendants' predecessor in interest, whereby such company was permitted to construct the race through the land now owned by her, and to deposit tailings in the conduit. By means of the ditch from plaintiff's upper dam she is enabled to irrigate the greater part of her land, and to deprive her of the use of the water by such means will necessarily injure her premises, and seriously damage her, notwithstanding which we believe she should be enjoined from maintaining the upper dam when the working in good faith of the placer mines by the defendants and their successors in interest anywhere on the creek within a quarter of a mile from her west boundary would be materially injured thereby.

2. The upper dam was not injuring the defendants' mines where they were working when they removed the obstructions; and hence no immediate necessity existed for a resort to the method adopted by them for the demolition of the property, for they could have then secured their rights by a suit; and, this being so, the costs of the lower court will not be disturbed. The decree there rendered will be modified, and one entered here as indicated in this opinion, but in all other respects affirmed, the plaintiff to be permitted at all times to irrigate her land by the lower dam and ditch, the defendants to recover their costs upon this appeal.          MODIFIED.

Decided 31 July, 1906.